UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------- x

HOTI ENTERPRISES, L.P. and
HOTI REALTY MANAGEMENT CO., INC.,

                            Appellants,

against                                       Case No.   12-cv-05341

GECMC 2007-C1 BURNETT STREET, LLC

                            Appellee
---------------------------------------------------------- x

## APPELLANTS' BRIEF IN SUPPORT OF APPEAL

**Mark A. Frankel**
**BACKENROTH FRANKEL & KRINSKY, LLP**
**489 Fifth Avenue**
**New York, New York   10017**

**Telephone:   (212) 593-1100**
**Facsimile:    (212) 644-0544**

**ATTORNEYS FOR THE APPELLANTS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES    3

BASIS OF APPELLATE JURISDICTION    4

STATEMENT OF ISSUE ON APPEAL AND
APPLICABLE STANDARD OF REVIEW    4

STATEMENT OF FACTS    4

General Background    4

At the outset of the bankruptcy case, Debtor's counsel traded most of the Debtor's rights under the Bankruptcy Code for GECMC's promise by to pay $50,000 in legal fees    5

The Debtor's Attempts to Recover From the Chaos Caused by Counsel's Misconduct Included a Pro Se Motion Which, by Virtue of Notice Pleading, Represents a Timely Motion to Reconsider the Cash Collateral Stipulation    9

The GECMC Loan Documents are defective, because, among other things, there are missing links in the chain of title    10

The Bankruptcy Court Confirmed GECMC's Plan to Transfer the Property to itself, even though the State Court had Dismissed the Foreclosure Case finding that the Leighton Signature was forged and that there was a Missing Assignment    12

ARGUMENT    14

The Debtor's October 31, 2011 Motion should be Deemed to have satisfied the one year rule under Federal Rule 60    14

Even if the District Court finds that Debtor failed to file its motion within one year, the fraud perpetrated on the Debtor by the Debtor's lawyer, acting in concert with GECMC is not a reconsideration category under Federal Rule 60(b)(6) limited to the one year rule    16

Alternatively, the particular species of fraud perpetrated in this case is exempted from the one year rule under Federal Rule 60(d)(1) and (d)(3)    17

The Bankruptcy Court's summary finding that GECMC mooted the Reconsideration Motion by generating new assignment documents is contradicted by the decision of the Supreme Court of Kings County, New York    20

CONCLUSION    22

## **TABLE OF AUTHORITIES**

### **Cases**

*Campaniello, Imports, Ltd. v. Saporiti Italia, S.p.A.*, 117 F.3d 655, 661-663
(2d. Cir. 1997)                                                                    17

*Link Co., Inc., v.Naoyuki Akikusa*, 367 F. Appendix 180 at 182-3 (2d. Cir. 2010)   17

*In Re: Old Carco, LLC*, 432 B.R. 40 at 52-53 (Bankr. S.D.N.Y. 2010)                19

*Eastern Finance Corp. v. JSC Alchevsk,, Iron and Steel Works*,
258 F.R.D. 76, 84-85 (S.D.N.Y. 2008)                                                20

### **Statutes and Rules**

28 U.S.C. 158(a)(1)                                              4

Fed. R. Bank. P. 9024                                           4, 14

Fed. R. Bank. P. 8013                                           4

11 U.S.C. 543                                                   5, 6, 16

11 U.S.C. 363                                                   5

Fed. R. Bank. P. 9011                                           5

Fed. R. Civ. 60                                                14 - 18

Fed. R. Civ. 59                                                15

### **Treatises**

*Wright and Miller, Federal Practice and Procedures,* Section 2870 (2012)      19

## BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. 158(a)(1) as an appeal from a final order of the United States Bankruptcy Court for the Southern District of New York.

## STATEMENT OF ISSUE ON APPEAL AND APPLICABLE STANDARD OF REVIEW

The issue on appeal is whether the Bankruptcy Court erred in denying Appellants' March 7, 2012 Motion For Relief From Stipulation And Order Governing Debtor's Use of Cash Collateral ("Cash Collateral Stipulation") and Related Matters Pursuant to Bankruptcy Rule 9024 (the "Reconsideration Motion").   Issues of law may be reviewed *de novo*.   The standard of review for findings of fact is the "clearly erroneous" standard, as set forth in Fed. R. Bank. P. 8013.

## STATEMENT OF FACTS

General Background

1.     On or about October 12, 2010 (the "Petition Date"), Hoti Enterprises LP and Hoti Realty Management, Co. Inc. (collectively, the "Debtor) filed Chapter 11 petitions. Bankruptcy Docket, Item 1.  (Unless otherwise noted, references to "Docket no." refer to the Bankruptcy Court docket in case no. 10-24129.)

2.     As of the Petition Date, the Debtor owned a residential apartment complex which is known as 2801 Fillmore Avenue, 3001 Avenue R, and 2719 Fillmore Avenue, Brooklyn, New York (the "Property").   Transcript, Docket no. 212, p. 4., lines15-18

4

3.      GECMC asserted a first priority mortgage (the "Mortgage") interest against the Property securing an indebtedness purportedly owed to it by the Debtors totaling $40,733,874.79, plus accrued and accruing fees, expenses and interest.   Transcript, Docket no. 212, p. 4., lines15- p.5, line 6

4.      Before the Petition Date, on or about February 27, 2009, GECMC commenced a foreclosure proceeding concerning its alleged interest in the Property in the Supreme Court of the State of New York, County of Kings (the "State Court"), titled *GECMC 2007-Cl Burnett Street, LLC* v. *Hoti Enterprises, LP, et al,* Index No. 5009/2009 (the "Foreclosure Proceeding").   By Order dated March 16, 2009, Barbara Odwak, Esq. was appointed receiver (the "Receiver") to collet rents and pay Property expenses, in lieu of continued management by the Debtor.   Reconsideration Motion, Docket no. 126, p. 4.


At the outset of the case, Debtor's counsel traded most of the Debtor's rights under the Bankruptcy Code for GECMC's promise by to pay $50,000 in legal fees

5.      Following the Petition Date, the Debtor, through Robert Rattet as Debtor's counsel, and GECMC entered into a so-called cash collateral stipulation (the "Cash Collateral Stipulation") which was approved by order of the Bankruptcy Court on or about December 22, 2010, and which is the source of the disputes giving rise to this appeal.   Cash Collateral Stipulation, docket no. 43.   The Cash Collateral Stipulation was unusual, to the say the least, given that the Receiver continued to operate the Property.

6.      By way of background, the general rule in bankruptcy is that upon the filing a bankruptcy petition, a state court appointed receiver is automatically displaced under section 543(a) of the Bankruptcy Code and required to turnover management to the debtor.   Section

5

543(d) of the Bankruptcy Code, however, creates an exception to the rule and allows a lender to move to continue the receivership and effectively deprive the Debtor of the right to use the rents.

7.       In a case where no receiver has been appointed or where the receiver complies with his turnover obligations, the Debtor still does not automatically enjoy the right to use rents, or "cash collateral" as rents are referred to in the Bankruptcy Code.   In that circumstance, section 363 of the Bankruptcy Code authorizes a debtor to pay expenses with the rents only with the lender's consent or upon an order of the Bankruptcy Court.   Typically, a debtor in bankruptcy will negotiate a cash collateral stipulation at the outset of its case, which typically allows the lender more rights than it would otherwise be entitled to under the Bankruptcy Code, thereby avoiding the time, expense and aggravation of a contested hearing.

8.       In summary, where a receiver has been appointed pre-petition, either the receiver continues to manage under section 543(d) of the Bankruptcy Code, or the receiver turns over management to the debtor, who then uses the rental proceeds to operate the property pursuant to a negotiated consensual cash collateral agreement, or pursuant to an order of the Bankruptcy Court.

9.       In this case, GECMC made a motion to continue the Receiver in possession under section 543(d) which, if approved, would have precluded the need to negotiate a cash collateral stipulation.   543(d) Motion, Docket no. 10.   If the Receiver was going to stay in possession, there was nothing to negotiate because the Debtor would not be using the rents.

10.       The Debtor made a motion to use cash collateral, which, if approved, would have required the Receiver to turn over the Property and then the Debtor could have used the rents only by way of a negotiated cash collateral stipulation or by way of a Bankruptcy Court order. Cash Collateral Motion, Docket no. 35.

6

11.     Incredibly, Mr. Rattet, ostensibly on the Debtor's behalf, negotiated a deal pursuant to which the Receiver remained in possession, but the Debtor was obligated make all of the concessions (and then some) that a debtor would typically make in a cash collateral stipulation for the right to use the rents.

12.     Among the Debtor's rights that Mr. Rattet agreed to surrender were the following:   (a) waiver of the Debtor's rights to challenge GECMC's claim after January 10, 2010 (a mere eighteen days during a holiday period after the Cash Collateral Stipulation was approved), (b) turnover of all monthly net operating income to GECMC, (c) granting GECMC a first priority lien on all of the Debtor's assets not previously pledged to GECMC, (d) "super-priority" status for GECMC's claims, and (e) termination of the Cash Collateral Stipulation on January 11, 2011, (only 19 days after it was signed), at which time GECMC was automatically entitled to an order vacating the automatic stay to continue to foreclose.   Cash Collateral Stipulation Docket no. 43, pp. 3 – 15.   Thus, with the stroke of a pen, the Debtor's right to challenge GECMC's claim was seriously jeopardized and the Debtor lost any ability to protect against the State Court foreclosure, which was one of the primary reasons for filing a Chapter 11 petition, but the Debtor did not get the use of the Property's rents in return.

13.     There was, however, one extraordinary provision that GECMC gave to counsel to the Debtor in exchange for the Debtor's extraordinary surrender:   a $50,000 "carve out" for Debtor's counsel.   Cash Collateral Stipulation, Docket No. 43, p. 10.   In other words, GECMC agreed to pay $50,000 to the Debtor's attorneys for legal fees even though it had no obligation to do so, and even though the Bankruptcy Code would otherwise have permitted nothing to be paid to Debtor's attorneys from the Property's rents or from any proceeds of sale of the Property.   The money for legal fees, however, had strings attached.   Debtor's counsel would

only be entitled to payment for fees provided "that such fees and expenses were not incurred in connection with the investigation or prosecution of any objection to or claim or cause of action with respect to or against the Lender, the Secured Claim, or the priority, validity or extent of Lender's liens."  Id.

14.     The Debtor understood that this was a bad deal and informed its counsel that it would not agree to the terms.

15.     Debtor's counsel nonetheless signed the agreement on the Debtor's behalf. The Cash Collateral Stipulation was also signed by GECMC's counsel.   Id. p. 17.   By signing the Cash Collateral Stipulation, counsel were both "certifying" that, to the best of their knowledge and belief, formed after an inquiry reasonable under the circumstances, that the claims, defenses and other legal "contentions" in the Cash Collateral Order were warranted and supported by existing law and evidentiary support. *See* Bankruptcy Rule 9011.   It is presumed that the Court relied on such certifications, having assumed that the professionals had jointly conducted all necessary due diligence prior to submitting the Cash Collateral Motion to be "So-Ordered."

16.     Thereafter, on or about January 19, 2011, the Bankruptcy Court entered an order lifting the automatic stay to permit GECMC to proceed with its Foreclosure Action.   Lift Stay Order, Docket no. 61.   At the same time, Mr. Rattet made a motion a motion to withdraw as Debtor's counsel, which was granted by the Bankruptcy Court.   Motion to Withdraw, docket no. 59.

8

<u>The Debtor's Attempts to Recover From the Chaos Caused by Counsel's Misconduct Included a</u>
<u>Pro Se Motion Which by Virtue of "Notice Pleading," Represents a Motion to Reconsider the Cash</u>
<u>Collateral Stipulation</u>

17.     Following Mr. Rattet's withdrawal, the Debtor retained the Dwyer firm as new counsel but the Dwyer firm does not specialize in Chapter 11 bankruptcies and the case stagnated.   In January, 2012 the Debtor retained Douglas Pick, an experienced Chapter 11 practitioner as new counsel.

18.     In the meantime, on October 31, 2011, Victor Dedvukaj, one of the Debtor's principals who routinely exercises his right to file pro se pleadings, did his best to fill the void and filed and served upon counsel to GECMC, a lengthy motion with numerous exhibits, seeking, among other things, reconsideration of the Bankruptcy Court's finding regarding GECMC's rights under its loan documents (the "October 31, 2011 Motion").   October 31, 2011 Motion, Case no. 10-24130, Docket no. 31.   Specifically, the motion states at paragraph 146 as follows:   "The fact of the matter is that HOTI ENTERPRISES L.P. believes that there is no doubt that GECMC 2007 C1 BURNETT STREET LLCs in this matter are not in compliance with the Uniform Commercial Code and state laws regarding perfection of this claim.   HOTI ENTERPRISES L.P. believes that the court should reconsider that GECMC 2007 C1 BERNETT STREET LLC is entitled to enforce the secured note here at issue."

19.     Since the Bankruptcy Court's only finding that the loan documents were enforceable was in the Cash Collateral Stipulation, based upon notice pleading principles, the October 31, 2011 motion was in fact a reconsideration made by the Debtor within one year of the December 2010 order approving the Cash Collateral Stipulation.   That motion was served upon counsel to GECMC the day it was filed.   Id. ex. C.   It seems to have been lost in the Bankruptcy

Clerk's office, however, and was not docketed until April 12, 2012.   It does not appear that a hearing was scheduled on the motion.   In addition, Mr. Dedvukaj sent a letter to the Court docketed November 14, 2011 mentioning the ugly circumstances surrounding the entry into the Cash Collateral Stipulation.   Letter, Docket no. 111.

20.     After his retention in January 2012, Douglas Pick analyzed the case, reviewed, among other things, the materials assembled by Mr. Dedvukaj in the October 31, 2011 Motion, and drafted and filed the Reconsideration Motion which is the subject of this appeal.   It should be noted that the factual arguments are similar.   The relief sought in the Reconsideration Motion is more narrowly focused on reconsideration and the presentation is more lawyer-like.

21.     Although Mr. Pick chose not to highlight Mr. Rattet's misconduct in the Reconsideration Motion, he attempted to make the point in oral argument, and in yet another pro se pleading, Mr. Dedvukaj supplemented the record.   Specifically, in a pleading dated April 20, 2012, Mr. Dedvukaj reiterated that the Debtor never authorized the Cash Collateral Stipulation. Affidavit, docket no. 176.


The GECMC Loan Documents are defective, because, among other things, as determined by the Supreme Court of the State of New York for Kings County, there are missing links in the chain of title

22.     It should be noted that the Debtor has never denied that Hoti Enterprises, L.P. signed the February 17, 2007 Amended, Restated and Consolidated Promissory Note in the amount of $31.0 million in favor of Deutsche Bank Mortgage Capital, LLC and the February 17, 2007 Amended Restated and Consolidated Mortgage and Security Agreement in favor of Deutsche Mortgage.

23.     Once the note and mortgage were executed, however, they were thrown into the fiendishly complex netherworld of commercial mortgage backed securities that ultimately led to the global economic meltdown.   The Debtor's Reconsideration motion details numerous inconsistencies, ambiguities, potential conflicts of interest and mistakes that were made while the loan documents were shuffled around as part of the securitization process.

24.     The two most significant defects, as described below, convinced the State Court to dismiss the Foreclosure Action.   Specifically, attached to the February 15, 2007 Promissory Note was an (undated) Allonge assigning the February 15, 2007 Promissory Note from Deutsche Mortgage to "Wells Fargo Bank, National Association, as trustee for the registered holders of GE Commercial Mortgage Corporation, Commercial Mortgage Pass-Through Certificates Series 2007-C1" (the "GE Trust").   The Allonge was allegedly signed by Michelle Leighton as Director of Deutsche Mortgage.   A cursory look at the Allonge creates the distinct impression that it was signed (without date) by someone other than Ms. Leighton. Ms. Leighton's actual signature (which is significantly different) can be: (i) found on an Assignment of Amended Restated and Consolidated Mortgage, Spreader and Security Agreement executed as of September 19, 2007 (prepared by Cadwalader, Wickersham & Taft LLC (See Exhibit "F" to Reconsideration Motion) and apparently notarized by John G. Baldacchino on September 17. 2007 (2 days after); and (ii) found on a Power of Attorney signed by Ms. Leighton on April 1, 2004 (also notarized by Mr. Baldacchino) (See Exhibit "G " to Reconsideration Motion). Other incarnations of Ms. Leighton's alleged signature can be found in Exhibit "H" and Exhibit "K" to the Reconsideration Motion).

25.     The other significant defect is a missing assignment.   On May 1, 2007, a Mortgage Loan Purchase Agreement (Exhibit "I" to Reconsideration Motion*)* was entered into

11

between GACC, as seller and GE Commercial Mortgage Corporation, as buyer, by which multiple loans were bought by GE Commercial Mortgage Corporation from GACC and thereafter "deposited" into the GE Trust, which included the Property (Designated as Loan #23 in Exhibit "I" to Reconsideration Motion on page 19 thereof).   The problem with this transaction is that there is no assignment of record from Deutsche Bank to GACC.

26.     The Bankruptcy Court did not discount these concerns.   Indeed, at the first hearing of the Debtor's Reconsideration Motion, the Bankruptcy Court stated that the forgery would generally be sufficient evidence of fraud to grant reconsideration.   April 5, 2012 Transcript, Docket no. 207, p. 28.   After that hearing, at the Bankruptcy Court's suggestion, GECMC caused new documents to be created which it annexed to its Memorandum.   Id., p. 64; Memorandum, Docket no. 179.

27.     At the final hearing of the reconsideration motion, the Bankruptcy Court ruled that any challenge to the Cash Collateral Order was time barred because the nature of the fraud was not egregious enough to constitute an exception to the one year rule for reconsideration, and that that the after-the-fact documents created to moot the motion in fact did moot the motion.

The Bankruptcy Court Confirmed GECMC's Plan to Transfer the Property to itself, even though the State Court had Dismissed the Foreclosure Case finding that the Leighton Signature was forged and that there was a Missing Assignment in the Chain of Title

28.     Meanwhile, throughout the time following the January 19, 2011 lift stay order, GECMC continued to press the Foreclosure Action.   By decision dated April 12, 2012, however, the State Court dismissed the foreclosure based upon GECMC's failure to be qualified to do business in the State of New York.   Person Objection, Docket No. 163, ex. B.   GECMC

12

obtained a stay pending appeal to keep the Receiver in place, and then GECMC moved for reconsideration of the dismissal of the Foreclosure Action.

29.     Perhaps sensing the impending jeopardy it faced in State Court, GECMC also filed a Chapter 11 plan in the Bankruptcy Court on December 15, 2011, to provide for the transfer of the Property to itself.   Plan, Docket no. 114.   Not only would this enable GECMC to avoid a loss in State Court, a transfer of real property under a Chapter 11 plan exempts the sale from the 2.75% transfer tax on real property transfers thereby avoiding about $500,000 of remittances that would otherwise be due to the City and State of New York.

30.     Then, on June, 13, 2012, the day before the final confirmation hearing on GECMC's Chapter 11 plan to transfer the Property to itself, the State Court ruled on GECMC's motion to reconsider the dismissal of its foreclosure.   The State Court not only adhered to its earlier dismissal order, the State Court found that GECMC's interest in the Property was not properly perfected based upon the same missing and or forged documents in the chain of title that were the basis for the Debtor's Reconsideration Motion.   The State Court also found that GECMC's after the fact new documents were ineffective to cure the earlier defects.   State Court Decision, Docket no. 246.

31.     The Bankruptcy Court nonetheless confirmed GECC's plan, finding that the State Court ruling on the defective assignments was not binding with respect to Bankruptcy plan confirmation.   Confirmation Transcript, docket no. 244.   The Debtor filed a separate appeal from that order.

13

# **ARGUMENT**

32.     The Debtor moved under Bankruptcy Rule 9024 based upon the Debtor's conclusion that the assignment of the loan documents to GECMC's was defective and that GECMC was not properly in the chain of title, and, therefore, not a proper party in interest to assert a secured claim in the Bankruptcy Court.   That challenge to GECMC.'s standing and ability to assert a secured claim was primarily premised upon the allegation that the power of attorney pursuant to which the note was transferred was forged and that there was no assignment between GECMC and GACC.

33.     The Debtor disagrees with the Bankruptcy Court's denial of it Reconsideration Motion the order approving the Cash Collateral Stipulation for three reasons:   (a) the fraud and misconduct surrounding the Debtor's entry into the Cash Collateral Stipulation is unconscionable, (b) the Debtor should be deemed to have moved within one year by virtue of the October 31, 2011 Motion, or, alternatively, the Debtor's failure to move for relief within one year was the result of inequitable misconduct, and (c) the after-the-fact documents produced by GECMC did not render the Reconsideration Motion moot.

## The Debtor's October 31, 2011 Motion should be Deemed to have satisfied the one year rule under Federal Rule 60

34.     Bankruptcy Rule 9024 incorporates Federal Rule of Civil Procedure 60. Federal Rule of Civil Procedure 60(b)(1) through (3) and provides for reconsideration upon a showing of mistake, inadvertence, surprise or excusable neglect, newly discovered evidence that with reasonable diligence could not have been discovered in time to move for a new trial under

14

Rule 59(b), or fraud or misconduct.   Federal Rule of Civil Procedure 60(c)(1) states that a motion under Rule 60(b) must be made within a reasonable time and for purposes of Rule 60(b)(1) through (3), reasonable time means no more than one year after the entry of the order.

35.     The Bankruptcy Court found that the Debtor's Reconsideration Motion was filed more one year after the Cash Collateral order was entered and that the Debtor could not, therefore, rely upon Rule 60(b)(1) through (3).   The Debtor respectfully disagrees.

36.     As noted above, the Debtor filed and served its pro se October 31, 2011 Motion, within the one year period, and that motion should be deemed to satisfy the one year requirement.   Although the Debtor did not highlight this fact in its Reconsideration Motion, the Order Denying Reconsideration states that the Bankruptcy Court relied upon all pleadings in the Bankruptcy Cases, and, therefore, it is appropriate for the District Court to consider all such pleadings.   The Debtor's subsequent motion, filed after the one year deadline, was based upon the same facts and sought essentially the same reconsideration relief, but in a more lawyer-like manner.   In other words, the Reconsideration Motion should be deemed to be a mere restatement or amendment of the timely filed October 31, 2011 Motion.

37.     As to the merits under Rule 60(b)(1) through (3), the Debtor respectfully submits that cause exists for reconsideration under Rule 60(b)(2) based upon the newly discovered evidence of forgery, which, as Judge Drain noted in colloquy, could not have been discovered with reasonable diligence because reasonable diligence does not involve sticking a pin into a corpse at a funeral to make sure the deceased is dead.   Transcript, Docket no. 207, p. 50.   Furthermore, GECMC's repeatedly proffered fatally defective loan documents, which is either the product of a mistake under section Rule 60(b)(1) are a particularly venal fraud under Rule 60(b)(3).

38.     Accordingly, the Debtor respectfully submits that grounds exist to reverse the Bankruptcy Court's finding that the Debtor failed to satisfy the one year requirement for a motion for reconsideration under Rule 60(b)(1) through (3).

**Even if the District Court finds that Debtor failed to file its motion within one year, the fraud perpetrated on the Debtor by the Debtor's lawyer, acting in concert with GECMC is not a reconsideration category under Federal Rule 60(b)(6) limited to the one year rule**

39.     Even if the District Court affirms the Bankruptcy Court finding that the Debtor failed to timely file its motion within one year under Rule 60(b)(1) through (3), the Debtor respectfully submits that the Bankruptcy Court erred in not granting relief pursuant to Rule 60(b)(6), or Federal Rule 60(d)(1) and (3).

40.     Federal Rule of Civil Procedure 60(b)(6) provides that a court may set aside an order "for any other reason that justifies relief.   In this case, as noted above, the Cash Collateral Stipulation was obtained through what appears to be a concerted effort by the Debtor's own attorneys, in concert with GECMC, to strip the Debtor of its right to challenge GECMC's claims in exchange for payment by GECMC of Debtor's counsel's fees.   There can be no other logical explanation for the existence of the Cash Collateral Stipulation.   It was irrelevant to the motion to continue the receivership under section 543, the Debtor instructed counsel not to sign it, and counsel disregarded the Debtor's instruction and signed it anyway.   The disruption of the attorney client relationship, not to mention the disruption of the orderly administration of the Bankruptcy case caused by such apparent misconduct is not a reason itemized in Rule 60(b)(1) through (3), and, therefore, falls under Rule (b)(6) as an "other reason that justifies relief."

41.     Thus, contrary to the finding of the Bankruptcy Court, the Debtor was *not* trying to use Rule 60(b)(6) as "an escape hatch for failing to meet the limitation period in Rule 60 for reasons that are therefore by the boards in Rule 60(b)(1) through (3)."

<u>Alternatively, the particular species of fraud perpetrated in this case is exempted from the one year rule under Federal Rule 60(d)(1) or (d)(3)</u>

42.     Alternatively, Federal Rule of Civil Procedure 60(d)(1) or (d)(3) apply.   As noted above, GECMC made a misrepresentation in the Cash Collateral Stipulation when it represented in paragraph L that it holds a perfected, valid, first-priority secured claim which is not subject to defense, counterclaim or offset.   This, together with the deal between GECMC and counsel to the Debtor to provide Debtor's counsel with a $50,000 carve out for legal fees in exchange for entry (against the Debtor's consent) of a completely unnecessary Cash Collateral Stipulation either rises to the level of a fraud on the Court, which is a basis for setting aside a judgment under Rule 60(d)(3) or gives rise to a an independent action to relieve a party from a judgment order or proceeding under 60(d)(1).

43.     In interpreting Rule 60(d), the Bankruptcy Court cited *Campaniello, Imports, Ltd. v. Saporiti Italia, S.p.A.*, 117 F.3d 655, 661-663, (2d. Cir. 1997) and *Link Co., Inc., v.Naoyuki Akikusa*, 367 F. Appendix 180 at 182-3 (2d. Cir. 2010) for the rule that in determining whether to entertain independent actions for relief a court should consider traditional equitable principles to guide its decision.   A movant must (a) show that it has no other available or adequate remedy; (b) demonstrate that its own fault, neglect or carelessness did not create the situation for which it seeks equitable relief; and (c) establish a recognized ground such as fraud, accident or mistake for the equitable relief.   The Bankruptcy Court quoted *Link* further as follows "The type

17

of fraud necessary to sustain an independent action, attack and a finality of judgment Rule 60(d) is narrower in scope than that which is sufficient for relief under Rule 60(b)."

44.     The Debtor does not dispute this portion of the legal standard articulated by the Bankruptcy Court.   Applying the law to the facts, there is no dispute that the Debtor lacks any other adequate remedy.   As to whether the Debtor's own fault created the situation for which it seeks equitable relief, the Debtor reiterates that given the fact that Debtor's counsel ignored the Debtor's instruction not to agree to the Cash Collateral Stipulation that GECMC enticed Debtor's counsel with a $50,000 carve out to ignore such instructions, the Debtor was the opposite of negligent and careless in trying to pick up the pieces of its shattered attorney client relationship and bankruptcy case.   Indeed, the Debtor resorted to filing the pro se October 31, 2011 Motion to bring the situation to the Bankruptcy Court's attention within one year.   Finally, fraud in the form of perjury by an institutional lender on loan documents should certainly grounds for equitable relief under any circumstances.

45.     Thus, the Debtor disagrees with the Bankruptcy Court's finding that the Debtor failed to demonstrate that its own fault, neglect or carelessness did not create the situation for which it seeks equitable relief.

46.     In summary, based upon the Second Circuit authority cited by the Bankruptcy Court, the Debtor respectfully submits that it established grounds to reconsider under Rule 60(d)(1) and that the District Court should reverse the Bankruptcy Court for denying the motion.

47.     Similarly, the Bankruptcy Court found that the fraud alleged by the Debtor was not the same species of fraud necessary to establish fraud on the Court under Federal Rule of Civil Procedure 60(d)(3).   In that regard, as noted by the Bankruptcy Court, "Fraud on the Court

encompasses only that type of fraud which attempted to defile the Court itself or is a fraud perpetrated by officers of the Court so that the judicial machinery cannot perform in the usual manner, its impartial task of adjudging cases that are presented for adjudication. The fraud must involve an unconscionable plan or scheme which is designed to improperly influence the Court in its discretion, have actually deceived the Court and the party must further be shown to have been precluded from fully and fairly presenting its case." *See In Re: Old Carco, LLC*, 432 B.R. 40 at 52-53 (Bankr. S.D.N.Y. 2010). See also *Wright and Miller, Federal Practice and Procedures,* Section 2870 (2012), where the editors note that: ."The standard for establishing fraud on the Court under Rule 60(b)(3) is higher and distinct from the more general standard for fraud under Rule 60(b)(3)."

48.     The Bankruptcy Court found that "The fraud or alleged fraud at issue here does not fall within this category.   It is an alleged fraud by the lender in its representation as to having a secured claim.   However, as has been long established in the Second Circuit the credibility and veracity of a witness at issue in an original proceeding cannot be later challenged by way of an independent action under Rule 60(d)."

49.     This case is not merely about GECMC's perjured allonge.   This case involves misconduct by GECMC by paying Debtor's counsel $50,000 to railroad a superfluous Cash Collateral Stipulation through the Bankruptcy and thereby effectively strip the Debtor of the means to discover the perjury or to challenge GECMC's claim.   The Debtor respectfully submits that such conduct constitutes "an unconscionable plan or scheme which is designed to improperly influence the Court . . .[and] actually deceived the Court and . . .prevented the [Debtor] from fully and fairly presenting its case."

50.     In short the fraud alleged by the Debtor is the type of fraud which subverts the integrity of the Court itself because it was not merely the result of perjury by Ms. Leighton, but included an inducement by GECMC and consequent involvement by Debtor's counsel to obtain of an order that would undermine the discovery of any such perjury.   *E.g. Eastern Finance Corp. v. JSC Alchevsk,, Iron and Steel Works*, 258 F.R.D. 76, 84-85 (S.D.N.Y. 2008).

The Bankruptcy Court's summary finding (with no explanation) that GECMC mooted the Reconsideration Motion by generating new documents purporting to replace the missing links in the chain title is contradicted by the facts of the case, as analyzed and determined by the Supreme Court of Kings County, New York

51.     The Bankruptcy Court found that the exhibits to GECMC's Memorandum "corrected what the debtor contends was a defect in the chain of title renders the dispute moot in any event."   The Bankruptcy Court did not explain the basis for its finding.

52.     At a subsequent hearing in State Court, however, at which GECMC sought reconsideration of the dismissal of its Foreclosure Action, GECMC requested the State Court to join in the Bankruptcy Court's finding that the chain of title issues were moot based upon the same newly created documents that were annexed to the GECMC Memorandum in this case.   The State Court, ruling on a question of New York law at GECMC's behest, reviewed the documents and refused, as follows:

> In its argument that it has title GECMC addresses Hoti's contention that the allonge signed by Michelle Leighton as Director of Wells Fargo was fraudulent by offering "confirmatory" documents issued by GACC, the successor in interest to Deutsche Bank as proof of its successful transfer and title. GECMC also quotes the bankruptcy court's statement on May 3, 2012 that"I conclude that based upon GECMCs supplemental memorandum in which it states and attaches exhibits supporting the statement that Deutsche Bank and it has corrected what the debtor [Hoti] contends was a defect in the chain of title renders the dispute moot in any event," renders their obligation to show that they had title at the commencement of the Lawsuit and therefore standing moot.   This court believes that the documents

which GECMC labels confirmatory are not sufficient to establish title or a proper assignment from Deutsche Bank.   It is well settled that the allonge regarding the assignment must be attached to the note and signed.   It is clear from the exhibits that the signature of the Director, Michelle Leighton is suspect.   The certificate of the secretary of GACC stating that "by unanimous consent, the Corporation ratified and approved and adopted a plan of complete Liquidation of DBMC authorized the dissolution of DBMC and that pursuant to the Plan of Liquidation, DBMC sold exchanged or liquidated to facilitate the liquidation, and made a liquidating distribution of all of its remaining assets to the Corporation ...." and the confirmatory allonge does not address the issue of whether the assignment itself was properly done and actually signed by the Director, Michelle Leighton.   There is no indication when the allonge was signed, nor is there a notary that would address the specific allonge signed by Michelle Leighton.   In addition, GECMC can't fix it by saying that "as of April 23, 2012, the parties wish to confirm the actual and legal transfer of the note from the assignor to the assignee."

In addition, the question exists as to whether Deutsche Bank skipped a chain in the assignment of the Hoti/Note by assigning the mortgage straight to Wells Fargo without assigning the note to GACC which actually sold the Hoti mortgage/note to GE Commercial Mortgage Corporation pursuant to a loan servicing agreement into the securitization process. (See SEC prospectus dated May 1, 2007).   According to the prospectus an agreement was made between GACC (Seller) and GE Commercial Mortgage Corporation (Purchaser).   In the agreement GE Commercial Mortgage is to place the loans (of which the Hoti mortgage/note is one) into a trust entitled GE Commercial Mortgage Corporation, Series 2007-CI.

It is noted that GECMC never provided any original document regarding the note and the allonge supporting their allegation that they were in fact the owner or assignee of the mortgage and the note at the commencement of the action. GECMC was not the assignee of the Hoti mortgage/note at time the foreclosure proceeding was filed.   It lacks standing because there was no proper assignment to it.   This action remains, for additional reason, as was determined by the April 4, 2012 decision and order, dismissed.

State Court Decision, Docket no. 246

53.     The Debtor adopts by reference the foregoing analysis performed by the State Court and for those reasons, respectfully submits that GECMC's new documents did not cure the defects in GECMC's chain of title.

54.     Thus, the State Court Decision establishes that the Debtor was not just blowing smoke.   GECMC's documents are fatally defective, and GECMC nonetheless obtained

the Cash Collateral Stipulation deeming them enforceable by enticing Debtor's counsel into

disregarding the Debtor's instructions and surrendering the Debtor's rights to object, in exchange

for a $50,000 carve out.


## CONCLUSION


WHEREFORE, the Appellants respectfully request that the District Court reverse

the Bankruptcy Court, and that the Court grant such other, further and different relief as this Court

may deem just and proper.


Dated:          New York, New York
                July 31, 2012


                          BACKENROTH FRANKEL & KRINKSY, LLP
                          Attorneys for the Appellants



                          By:    s/Mark A. Frankel
                                 489 Fifth Avenue
                                 New York, New York   10017
                                 (212) 593-1100

22