UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
HOTI ENTERPRISES, L.P. and
HOTI REALTY MANAGEMENT CO., INC.,

                  Appellants,

against                                     Case No.   12-cv-05341

GECMC 2007-C1 BURNETT STREET, LLC

                  Appellee
------------------------------------------------------------ x


# APPELLANTS' REPLY BRIEF IN SUPPORT OF APPEAL


**Mark A. Frankel**
**BACKENROTH FRANKEL & KRINSKY, LLP**
**489 Fifth Avenue**
**New York, New York   10017**

**Telephone:   (212) 593-1100**
**Facsimile:   (212) 644-0544**


**ATTORNEYS FOR THE APPELLANT**S

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES     3

The Appeal is Not Moot Because Meaningful Relief can be Granted     4

The Debtor argued below that the Cash Collateral Stipulation was Inappropriate and Unnecessary, and that the Debtor Instructed Counsel Not to Agree to it     6

The Dedvukaj Declaration Raised Salient Reconsideration Issues Within One Year     7

Misconduct by a party's own counsel is not the same as simple misconduct by an opposing party, thus taking the misconduct in this case beyond the Rule 60(b) one year limitation, since the Debtor's own attorneys, in concert with GECMC, stripped the Debtor of its right to challenge GECMC's claims in exchange for payment by GECMC of Debtor's counsel's fees     8

# **TABLE OF AUTHORITIES**

## **Cases**

*Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12-13 (1992)   4

*Herbert Constr. Co. v. Greater N.Y. Sav. Bank (In re 455 CPW Assocs.)*, 225 F.3d 645, No. 99-5068, 2000 WL 1340569, at *2 (2d Cir. 2000)   4

*In re Delta Air Lines, Inc.*, 374 B.R. 516, 522 (S.D.N.Y. 2007)   4

*In re Lizeric Realty Corp.*, 188 B.R. 499, 502 (Bankr. S.D.N.Y. 1995)   10

*In re R&G Props., Inc.*, Case No. 08-10876, 2009 WL 2043875, at *6–7 (Bankr. D. Vt. July 6, 2009)   10

## **The Appeal is Not Moot Because Meaningful Relief can be Granted**

The United States Supreme Court has held that an appeal must be dismissed as constitutionally moot only when "an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatsoever to a prevailing party." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12-13 (1992) (internal quotations omitted). Even if a reviewing court is unable "to return the parties to the status quo ante" upon reversal of an order, an appeal will not be considered constitutionally moot so long as "a court can fashion some form of meaningful relief in circumstances such as these." Id. at 12-13.

Thus, in *Herbert Constr. Co. v. Greater N.Y. Sav. Bank (In re 455 CPW Assocs.)*, 225 F.3d 645, No. 99-5068, 2000 WL 1340569, at \*2 (2d Cir. 2000), the Second Circuit did not dismiss an appeal on mootness grounds with respect to the allowance of a bank's note and mortgage, even though the bank's secured creditor plan had already been confirmed and the subject property already transferred to the bank. The court noted that "A case becomes moot, then, only when it is 'impossible for the court to grant any effectual relief whatever." (*quoting Church of Scientology*, 506 U.S. at 12).

Against this background, GECMC relies on such cases as *In re Delta Air Lines, Inc.*, 374 B.R. 516, 522 (S.D.N.Y. 2007) for the principle that effective relief cannot be granted without completely unraveling the Plan and creating an unmanageable situation.

4

In *Delta*, however, the Court found that unraveling the plan would create an unmanageable situation because Delta had entered into "several new agreements relating to Delta's use of the Cincinnati/Northern Kentucky Airport, and that Delta has distributed millions of dollars in freely tradeable stock through financial intermediaries that cannot be reversed."   374 B.R. at 522.

In this case, by way of contrast, the only actions that would be unraveled by disrupting plan confirmation would be the following: (a) transfer of the Property and tenant leases to GECMC, (b) payment to the law firm of Rattet, Pasternak, LLP of $45,000 and (c) payment to the law firm of Pick & Zabicki, LLP of $74,993.29.   Title to the Property and the assignment of leases, however, can easily be transferred back to the Debtors in the event of reconsideration or of a successful appeal.

As to the $129,000 paid to the Debtors' former attorneys, it should also be noted that both of the Debtors' former retained counsel attempted to protect the Debtors' estates from a forfeiture under a plan and, therefore, they would probably understand, albeit not happily, the consequence of their efforts ultimately succeeding.

It should also be noted that GECMC asserts that if the District Court reverses the Bankruptcy Court, the Debtor's next step will be to commence an adversary proceeding or contested matter challenging the validity of GECMC's security interests, which GECMC contends, would be an exercise in futility.   The Debtor, however, does not necessarily need to win that additional litigation because the stay was already lifted in Bankruptcy Case to permit the State Court to rule on the issue of the validity of GECMC's security interest and the State Court has held

that GECMC's security interest is fatally defective.   That issue should not be re-tried.   In fact the only reason the Bankruptcy Court is not honoring the State Court decision is that the Bankruptcy Court does not agree that the State Court decision supersedes the Cash Collateral Order.   A successful appeal herein will eliminate that issue because the Cash Collateral Order will no longer be an obstacle to giving full faith and credit to the State Court decision.

Accordingly, in the event of a successful appeal, the next step would be the unwinding of plan confirmation.   Unlike such cases as *Delta Airlines*, this will not create an unmanageable situation.

**The Debtor argued below that the Cash Collateral Stipulation was Inappropriate and Unnecessary, and that the Debtor Instructed Counsel Not to Agree to it**

At oral argument, Debtor's counsel opened his presentation with the argument that the cash collateral stipulation was unusual and inappropriate in the context of the Debtor's Chapter 11 case.  By the same token, the Debtor's refusal to consent to the Cash Collateral Stipulation and misconduct by Debtor's counsel in concert with GECMC was argued by Mr. Dedvukaj in open court.   May 3, 2012 transcript, pp. 46-50.   Thus, although Appellant does not deny that the general rule is that an appellate court will not consider an issue raised for the first time on appeal, it does not apply in this case.

**The Dedvukaj Declaration Raised Salient Reconsideration Issues Within One Year**

Admittedly, the Debtor did not argue below that the Dedvukaj Declaration should be deemed a timely filed motion for relief from the Cash Collateral Order under Rule 60. The Cash Collateral Order, however, states that the Bankruptcy Court considered *all* pleadings, so it is fair to make the argument. Indeed, the Dedvukaj Declaration was designated as part of the record on appeal by the Appellee.

In light of the Appellee's argument, it bears reiterating that the October 31, 2011 Dedvukaj Declaration stated as follows: "The fact of the matter is that HOTI ENTERPRISES L.P. believes that there is no doubt that GECMC 2007 C1 BURNETT STREET LLCs in this matter are not in compliance with the Uniform Commercial Code and state laws regarding perfection of this claim. HOTI ENTERPRISES L.P. believes that the court should reconsider that GECMC 2007 C1 BERNETT STREET LLC is entitled to enforce the secured note here at issue." October 31, 2011 Motion, Case no. 10-24130, Docket no. 31, p. 146

Since it was only the Cash Collateral Stipulation that constituted a Bankruptcy Court finding that the loan documents were enforceable, based upon notice pleading principles, the October 31, 2011 was in fact a reconsideration motion made by the Debtor within one year of the December 2010 order approving the Cash Collateral Stipulation. Furthermore, there was nothing in the pleading to indicate that the Debtor intended to limit the pleading to the then pending Motion to Remove Sanctions.

7

Finally, with respect to docketing, the document was time-stamped on October 31, 2011 by the Clerk of Court and served on GECMC the same day.   The fact that it was not docketed by the Clerk of Court until April 2012 was beyond Mr. Dedvukaj's control because only attorneys are allowed to file pleadings electronically.   Non-lawyers must rely on the Clerk of the Court to docket pleadings once they are filed.

In any event, the Dedvukaj Declaration states the need for "reconsideration."   The meaning of that word is unambiguous even without reference to a specific Federal Rule.

**Misconduct by a party's own counsel is not the same as simple misconduct by an opposing party, thus taking the misconduct in this case beyond the Rule 60(b) one year limitation, since the Debtor's own attorneys, in concert with GECMC, stripped the Debtor of its right to challenge GECMC's claims in exchange for payment by GECMC of Debtor's counsel's fees**

GECMC implies that the Debtor's allegations of misconduct are limited to "misconduct by an opposing party" and therefore fall within the one year limitation contained in Rule 60(b).   The Debtor's allegations, however, included not only misconduct by the opposing party, but misconduct by the Debtor's own counsel while acting in concert with the opposing party.   Thus, the Debtor respectfully submits that reconsideration should have been granted under Rule 60(b).

The proceedings in this case all involved fast-paced motion practice, much of it in the vernacular of the Bankruptcy bar.   Indeed, much of what goes on in Bankruptcy Court is opaque to non-bankruptcy lawyers, let alone laymen.   The term "cash collateral" is itself a code word that

8

few non-bankruptcy lawyers understand until it is explained to them.   And, the very concept of cash collateral is arcane to those who do not deal with it on a regular basis.

Against this background, GECMC argues that since Mr. Dedvukaj did not rise up in Court and argue against his own lawyer and the Bankruptcy Court at the time of the cash collateral hearing establishes that he consented to the Cash Collateral Order.   First of all, this is an unfair burden to place upon a party, particularly since the order at issue was not approved at the hearing.   Rather, the Bankruptcy Court ordered the parties redraft the document and submit it, leaving any reasonable observer with the impression that the Bankruptcy Court had not ruled and wanted the parties to first try to settle the matter.   More to the point, rather than inform the Court that the client refused to approve the stipulation notwithstanding the Court's instructions, Debtor's counsel disregarded the client and signed the stipulation himself, thus earning a $50,000 carve out.   None of these facts is new and they are all appropriately considered on appeal as misconduct sufficient to require reconsideration.

In summary, Mr. Dedvukaj's failure to rise and be heard in the Bankruptcy Court at the time of the cash collateral hearing should not be held against him.   Rather, he should be credited for ultimately rising to be heard at the reconsideration hearing.

GECMC argues in the alternative that there was no misconduct in connection with the cash collateral stipulation because the stipulation was routine and indeed *necessary* to avoid dismissal of the Debtor's case.   This argument is unsupported by the case law cited or common sense. Indeed, contrary to the statement in the Appellee brief, there is nothing in the law that would cause

9

Case 7:12-cv-05341-CS   Document 13   Filed 09/04/12   Page 10 of 12

dismissal of a bankruptcy case because a debtor did not enter into a cash collateral stipulation after agreeing to a mortgagee's demand that a receiver remain in possession.  If a debtor is not using cash collateral because a receiver is remaining in possession, there is no reason for such a stipulation, let alone a stipulation that requires a surrender of valuable rights.

The case law GECMC cites is entirely consistent with the foregoing, and in no way supports the argument that the cash collateral stipulation in this case was just business as usual.  *In re Lizeric Realty Corp.*, 188 B.R. 499, 502 (Bankr. S.D.N.Y. 1995) is cited for the unremarkable observation that the secured creditor "consented to the receiver's use of cash collateral to the extent necessary to pay normal operating costs of the [debtor's] Building."  Similarly, GECMC cites *In re R&G Props., Inc.*, Case No. 08-10876, 2009 WL 2043875, at *6–7 (Bankr. D. Vt. July 6, 2009).  In that case, the Bankruptcy Court required the receiver to make debt service payments to the mortgagee rather than park the money in his bank account, because the property could support such debt service.  In neither of those cases was there a collateral stipulation nor any surrender of the debtor's rights to challenge the mortgagee's claims, nor any $50,000 payment to debtor's counsel.

In summary, there is nothing in the law or the practical administration of a bankruptcy case that would justify a debtor surrendering additional valuable rights to a lender with respect to the use cash collateral by a receiver after having already surrendered the right to demand that the receiver turnover management.

Thus, while it is true that a carve-out for debtor's counsel is not uncommon in cash collateral stipulations (albeit in amounts much less than $50,000), the very existence of a cash collateral stipulation is unheard of where a receiver remains in possession, thus making the carve out a non-issue in that circumstance.   The same holds true for a waiver of the Debtor's right to contest defects in loan documents, which in this case turned out to be a devastating concession. Although GECMC argues at length that there is no evidence of fraud in connection with the loan documents because the Debtor has "submitted no evidence to overcome the presumption of due execution," or that the assignment from Deutsche Bank was defective, the State Court dismissed GECMC's foreclosure case based, among other things, on such findings.   State Court Decision, Docket no. 246.   That decision should be deemed to be clear and convincing evidence of loan defects.

Thus, the Debtor believes that there was nothing "gross or reckless' in its conclusion that the Debtor's own attorneys, in concert with GECMC, stripped the Debtor of its right to challenge GECMC's claims in exchange for payment by GECMC of Debtor's counsel's fees.

11

## **CONCLUSION**

WHEREFORE, the Appellants respectfully request that the District Court reverse the Bankruptcy Court, and that the Court grant such other, further and different relief as this Court may deem just and proper.

Dated:      New York, New York
            September 4, 2012

                        BACKENROTH FRANKEL & KRINKSY, LLP
                        Attorneys for the Appellants


                        By:    s/Mark A. Frankel
                               489 Fifth Avenue
                               New York, New York   10017
                               (212) 593-1100